ELIZABETH T. MUSICK
Musick Law Firm, PLLC
P.O. Box 726
Bozeman, MT 59771
elizabeth@mtlawpllc.com
Telephone: (406)579-9481

PAUL GALLARDO
Flaherty Gallardo Lawyers
1026 1ST Ave. S.,
P.O. Box 1968
Great Falls, Montana 59403
Telephone: (406) 727-8494
Facsimile: (406) 727-8537
paul@greatfallsfirm.com

Co-Counsel for Defendant

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

********

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>vs.<br><br>DOUGLAS DARREN MALATARE,<br><br>Defendant. | Cause No. CR-23-80-GF-BMM<br><br><br><br>**DEFENDANT'S BRIEF SUPPORTING MOTION FOR NEW TRIAL UNDER FED. R. CRIM. P. 33** |

COMES NOW, the Defendant, DOUGLAS DARREN MALATARE, by and through his attorneys of record, Elizabeth T. Musick and Paul Gallardo, and hereby

respectfully submits this Brief Supporting Motion for New Trial Under Fed. R. Crim. P. 33.

This Motion is based on the grounds that trial testimony conclusively established that the texts at issue would *not* subject S.W. to criminal or civil liability for purposes of Fed. R. Evid. 804(b)(3).

## FACTUAL AND LEGAL BACKGROUND

The Government argued that text message statements of the decedent, S.W. were admissible under Rule 804(b)(3) as statements against penal interest. The text message exchange originally proposed by the Government between S.W. and Mr. Malatare was as follows:

| | |
|---|---|
| S.W.: | I got a job with housing, on day 4 now. Cleaning remodeled houses. |
| Malatare: | Cool |
| S.W.: | Did you make it home? |
| Malatare: | About 3.5 hour’s |
| S.W.: | I went through another dental surgery yesterday in Kalispell. By big face is sure sore. They gave me Tab 5 but they don’t work very long. Text me when you get home. |
| Malatare: | Ok |
| S.W.: | Are you home |
| Malatare: | Taking shit just now lol |
| S.W.: | What name are you giving our baby? |
| Malatare: | Catch up with you lil bit bro, you looking |
| S.W.: | Yeah I’ll be home. Just got off work. I can only afford a half if you can stop by. |
| Malatare: | Watch for me |
| S.W.: | Ok |

*See* Government's Exhibit 6.

On the first day of trial, September 17, 2024, the Defendant raised an objection relating to Wippert's hearsay statements. The Court heard arguments from both sides. The Court requested the Parties to submit briefing on the issue by 5:00 p.m. that day. The Parties submitted briefing. (*See* Doc. Nos. 73, 74). The Government agreed to remove the majority of the text messages from Government's Exhibit 6; however, Government's Exhibit 30 still contained two statements from S.W. Prior to Opening Statements on September 18, 2024, the Court preliminarily overruled the Defendant's objection, but stated the Government must lay foundation prior to mentioning the text messages set forth in Exhibit 30.

At trial, Jaynell Davis testified that a person looking to sell drugs typically does not communicate so expressly, but rather uses words like "Are you looking?" *See* Trial Transcript Vol. 2, p. 169. She further testified that if she wanted to purchase half a pill, she would ask "Can I get a half?" *See* Trial Transcript, Vol. 2, p. 172. It was based on this foundation that the Court permitted the shortened text exchange set forth in Government's Exhibit 30, which only included two of S.W.'s hearsay statements, specifically "Yeah I'll be home. Just got off work. I can only afford a half if you can stop by," and "Ok." In doing so, the Court stated as follows,

//

> I will allow the four bubbles from that text message exchange to be admitted as Exhibit 30 as evidence of the – Mr. Wippert putting himself – it's against his penal interests to testify to that. As the government argues, it shows – it exemplifies a drug transaction being consummated.

*See* Trial Transcript, Vol. 2, p. 176. Following Davis' testimony, FBI Agent Katherine Donohue testified on behalf of the Government regarding the Cellebrite phone extraction she performed on Mr. Wippert's phone to retrieve the text messages, and Government's Exhibit 30 was admitted over the Defense objection. *See* Trial Transcript, Vol. 2, p. 181-182. SA Donohue testified that she did not know the conversion from UTC to Mountain Standard Time, so she could not testify to the accurate date and time that the text messages were sent. *See* Trial Transcript, Vol. 2, p. 183. SA Donohue further testified that the text exchange between the Defendant and S.W. would not subject either declarant to any criminal liability. *See* Trial Transcript, Vol. 2, p. 185-186. The Government did not provide any testimony establishing what specific crime S.W. would be liable for based on the texts alone.

## LEGAL STANDARD

Rule 33 authorizes a new trial "if the interest of justice so requires." Fed. R. Crim. P. 33(a). A new trial proves necessary only when allowing the verdict to stand would rise to the level of a "serious miscarriage of justice." *United States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992).

To qualify as a hearsay exception under Fed. R. Evid. 804(b)(3), "the declarant's statements must, *in a real and tangible way*, subject him to criminal

liability." *United States v. Davis*, No. 22-50058, 2024 WL 222271, at *1 (9th Cir. Jan. 22, 2024) quoting *United States v. Hoyos*, 573 F.2d 1111, 1115 (9th Cir. 1978) (emphasis added).

## DISCUSSION

### 1. Motion for New Trial Under Rule 33

In 1994, the United States Supreme Court clarified the scope of the hearsay exception for statements against interest under Rule 804(b)(3) of the Federal Rules of Evidence. See *Williamson v. United States*, 512 U.S. 594, 596 (1994). In *Williamson*, the hearsay statements at issue were statements by Harris, a co-conspirator, about where he had gotten cocaine that was found in his possession, and where he planned to deliver the drugs. *Id*. In the course of making his statements to law enforcement, Harris told two different versions, claiming one to be true and one to be false. *Id*., at 597. When called to testify at Williamson's trial, Harris invoked his Fifth Amendment rights, thus he was an unavailable witness. *Id*. the Court ruled that under Rule 804(b)(3), law enforcement could testify to Harris's out of court statements. *Id*., at 598.

On appeal, the Eleventh Circuit affirmed, and the United States Supreme Court granted Certiorari to determine the scope of Rule 804(b)(3), F.R.Evid. At the outset, the Court noted the underlying purpose of the rule against hearsay set forth in Rule 802 F.R.Evid. *Williamson*, 512 U.S. 594, 598. The Court stated,

> The hearsay rule, Fed.Rule Evid. 802, is premised on the theory that out-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements—the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine—are generally absent for things said out of court.

*Id*. Looking to whether Harris's entire confession could be admitted under Rule 804(b)(3), the Supreme Court analyzed the meaning of the word "statement" in the context of Rule 804(b)(3), and it decided that a narrower interpretation of the word "statement" was required to determine which particular statements were self-inculpatory, and would thus expose the declarant to criminal liability, and which statements were simply in proximity to a statement against interest. *Id.*, at 599.

> In our view, the most faithful reading of Rule 804(b)(3) is that it does not allow admission of non-self-inculpatory statements, even if they are made within a broader narrative that is generally self-inculpatory. The district court may not just assume for purposes of Rule 804(b)(3) that a statement is self-inculpatory because it is part of a fuller confession, and this is especially true when the statement implicates someone else.

*Id*., at 600-601. Thus, the scope of the exception set forth in 804(b)(3) applies only to the statements themselves which are plainly against interest. *Id*. The Court went on to explain that whether a statement is a statement against interest or not, can only be determined by viewing it in context. *Id*., at 603. "The question under Rule 804(b)(3) is always whether the statement was sufficiently against the declarant's penal interest "that a reasonable person in the declarant's position would not have

made the statement unless believing it to be true," and this question can only be answered in light of all the surrounding circumstances." *Id.*, at 603-604. Thus, the United States Supreme Court remanded the case for a determination of whether each of the statements in Harris's confession was truly a statement against interest and admissible under Rule 804(b)(3). *Id.*, at 604.

In the present matter, none of S.W.'s statements subject him to criminal liability, and thus, they all should have been excluded by the Court. The Court agreed with the Defendant that the first five statements made by S.W. were not statements against interest, and as set forth above, the Court only permitted the Government to admit two of the statements made by S.W. in the text message conversation with the Defendant at trial.

In the statements made by S.W., which were admitted at trial over objection, S.W. states that he will be home, he just got off work, and he "can only afford a half if you can stop by." This is not a statement against interest. The statement is not incriminating on its face, and it would not subject S.W. to criminal liability in any way. The parties never discuss drugs, nor do they discuss to what "a half" refers. Further, Special Agent Donohue testified that this statement would not subject S.W. to a criminal charge. S.W.'s second statement that was admitted at trial simply says "Ok." This is clearly not a statement against interest.

"A half" in both the criminal and non-criminal context could be anything. "A half" could be half of a sandwich. "A half" could be half of a gallon of milk. Turning to the criminal context, "a half" could refer to a half an ounce of marijuana. "A half" could refer to half a gram of methamphetamine. Finally, what the Government would have the Court believe is that "a half" referred to a half of a fentanyl pill. However, when asked at trial whether she knew what S.W.'s statement was referring to, SA Donohue testified, "I – I don't. I could speculate, but I don't know, sir." *See* Trial Transcript, Vol. 2, p. 185. This testimony establishes the unreliability of the hearsay statements and proves that they are not statements against interest.

As previously highlighted, S.W.'s entire phone records were produced in Discovery, and in 336 pages of phone records, S.W. never refers to fentanyl, or any other drug for that matter. Further, there are no references to "fettys" or "blues" or any of the commonly known street slang nicknames for fentanyl. Therefore, for S.W.'s statement to be considered to subject him to criminal liability, the Court would be required to read something additional into the hearsay statement which was not actually present. Moreover, even if the texts pertained to marijuana, the Government's position at trial was that possessing or purchasing marijuana would *not* subject a person to criminal liability.

Despite the Government's argument in its brief or at trial, the texts themselves do not refer to what matter constitutes a "half." The Government argues that, looking at outside matters, such as S.W.'s manner of death, they must have been referring to fentanyl. The Government's position is based on circular reasoning. It is premised on the suspicion that the Defendant must have sold S.W. fentanyl. Yet, this very question was the central issue as to Count 1. The texts do not specify what "a half" is. Because of this, they should have been excluded. Instead, the Government was permitted to step in as fact finder and conclude that the Defendant sold S.W. fentanyl, an ultimate fact issue, and thus, the texts themselves would constitute hearsay. This is precisely what the hearsay rule, and the *Williamson* and *Davis* opinions seek to protect against.

At its core, the rule against using hearsay evidence is to prevent secondhand statements from getting admitted into evidence, given their potential unreliability. Here, the hearsay evidence admitted at trial against Mr. Malatare was an unreliable statement made by the decedent, S.W., which the Government sought to introduce against Mr. Malatare to prove that S.W. intended to purchase half of a fentanyl pill from him. There was no other corroborating information in the remainder of S.W.'s statements in his phone records which confirms that the Government's interpretation of "a half" actually means "a half a fentanyl pill." For these reasons, the statement lacked sufficient reliability, and it should have been excluded by the Court.

As the Government argued repeatedly throughout the course of trial, the text exchanges were key evidence in this trial. The jury even submitted a question about the text messages and the conversion from UTC to Mountain Standard Time, which prompted the Court to instruct the Jury on the time conversion. The text messages should not have been permitted at trial. Because the verdict hinged largely on the text messages, a new trial is appropriate.

**CONCLUSION**

The Government was permitted to introduce Exhibit 30, provided that it lay foundation that S.W. subjected himself to criminal or civil liability for purposes of Rule 804(b)(3). The Government failed to establish this. Moreover, the Government's witnesses established that the text messages themselves would not subject S.W. to criminal liability. When the Court allowed the text messages to be admitted into evidence as a statement against interest, the Court invaded the province of the jury by inappropriately assuming that the product at issue in the texts pertained to fentanyl. The text messages should have been excluded at trial. Because the jury's decision was based largely on the text message exchange, the Court should order a new trial under Fed. R. Crim. P. 33.

//

//

//

DATED this 3rd day of October, 2024.

DOUGLAS DARREN MALATARE

By: /s/ Elizabeth T. Musick
ELIZABETH T. MUSICK
*Counsel for Defendant*

By: /s/ Paul Gallardo
Paul Gallardo
*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on October 3, 2024, a copy of the foregoing document was serviced on the following persons by the following means:

1, 2 ________ CM-ECF
__________ Hand Delivery
3 ________ Mail
__________ Overnight Delivery Service
__________ Fax
__________ E-Mail

1. CLERK, UNITED STATES DISTRICT COURT

2. JEFFREY K. STARNES/KALAH PAISLEY
Assistant U.S. Attorney
*Counsel for Plaintiff*

3. DOUGLAS DARREN MALATARE
c/o Elizabeth T. Musick
*Defendant*

/s/ Elizabeth T. Musick
ELIZABETH T. MUSICK