# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **CR-23-80-BMM-1** |
| Plaintiff, | |
| vs. | **ORDER** |
| DOUGLAS DARREN MALATARE, | |
| Defendant. | |

## INTRODUCTION

Defendant Douglas Darren Malatare has moved for a new trial pursuant to Fed. R. Crim. P. 33. (Doc. 98.) Malatare argues that the Court improperly admitted text messages that trial testimony established would not have subjected the sender to criminal or civil liability as required to satisfy Fed. R. Evid. 804(b)(3). (*Id.* at 2.) The Government opposes the motion. (Doc. 106.) The Court conducted a hearing on the motion on December 10, 2024. (Doc. 109.)

## BACKGROUND

A jury convicted Malatare of distribution of fentanyl resulting in death, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and possession with intent to distribute fentanyl, in violation of 21 U.S.C. § 841(a)(1). (Doc. 88.) The jury

answered "true" to the allegation that Count 2 involved 40 grams or more of a substance containing a detectible amount of fentanyl. (*Id.* at 2.)

At trial, the Government sought to admit a text message conversation ("Exhibit 6") between Malatare and the decedent, S.W. (Doc. 90-1 at 5–6.) Malatare objected to the admission of S.W.'s text messages as inadmissible hearsay. (Doc. 71.) The Court heard arguments and requested that the parties brief the issue. (*Id.*; Doc. 73; Doc. 74.) The Government agreed to remove most of the text messages from Exhibit 6 but included two remaining statements from S.W. (Doc. 90-1 at 32.) The Court preliminarily overruled Malatare's objection to the text messages but instructed the Government not to discuss the messages during opening statements and to lay a foundation for admission. (Doc. 76.) The text messages admitted as Exhibit 30 are as follows:

Malatare: Catch up with you lil bit bro, you looking

S.W.: Yeah I'll be home. Just got off work. I can only afford a half if you can stop by.

Malatare: Watch for me

S.W.: Okay

Malatare: How you doing bro

Malatare: Hello bro

(Doc. 90-1 at 32.)

The Government presented witness testimony from Jaynell Davis to provide foundation for the messages in Exhibit 30. (Doc. 96 at 140–49.) Davis, a recovered methamphetamine and fentanyl addict, testified that she had lived in Browning when she began using fentanyl. (Doc. 96 at 140–41.)  Davis testified that buyers and sellers of drugs would avoid using the names of drugs, such as methamphetamine or fentanyl, in messages but instead would write, "I'm looking. Who has?"  (Doc. 96 at 142–43, 145.)  During a discussion about the street names for different quantities of fentanyl, such as a "roll" or "boat" of fentanyl pills, the Government asked Davis:

> If you were going to purchase the normal amount that you would get, a half of a pill of methamphetamine [verbatim], what is the language that you would use in order to set up that transaction?

The witness answered, "Can I get a half?" (Doc. 96 at 147.) Davis further testified that she most commonly would purchase "a half of one" (a half pill of fentanyl) because the high cost of fentanyl in Browning, $50 per pill, often prevented users from purchasing a whole pill or more than one pill.  (Doc. 96 at 145.)  Fentanyl users would purchase a half or quarter pill to "take the edge off" fentanyl withdrawal symptoms. (Doc. 96 at 148.)

The Court agreed to admit the text messages on the basis of Davis's testimony as "against [S.W.'s] penal interests" because it "exemplifies a drug transaction being consummated." (Doc. 96 at 151.) The Court distinguished S.W.'s

messages from those in *United States v. Davis*, a case cited by Malatare in his responsive briefing on the messages' admissibility, noting that the messages "put his penal interest at issue, and also all the context statements have been—or the logistical statements have been deleted here." (Doc. 96 at 152.)

The Government then called FBI Agent Katherine Donohue, who performed the cellphone extraction and retrieved the messages between Malatare and S.W. (Doc. 96 at 156.) The Court admitted Exhibit 30. (Doc. 96 at 157.) Agent Donohue testified that the conversation between Malatare and S.W. occurred at "around the time" that S.W. died. (Doc. 157.) During cross-examination, Agent Donohue "could speculate," but could not confirm with certainty what S.W. meant by "a half." (Doc. 96 at 160.) A discussion of the text messages' criminality followed:

Q: Would either of these individuals—could they be charged with a particular crime just based on this alone in your experience?

A: Based off of just these text messages?

Q: Yes.

A: No. No.

(Doc. 96 at 160–61.)

The Government presented witness testimony that Malatare trafficked fentanyl into Montana and normally purchased two "boats" of fentanyl pills every one to two weeks. (Doc. 96 at 166.) S.W.'s family members testified that they saw S.W. sitting in a vehicle known to be associated with Malatare

a few hours before S.W.'s death. (Doc. 96 at 30–31, 46–48.) S.W. told his

mother "Doug" was outside in the car. (Doc. 96 at 30.) Later, S.W. appeared

to have trouble staying awake. (Doc. 96 at 32.) S.W. died that evening.

(Doc. 96 at 35–36.)

## STANDARD OF REVIEW

Federal Rule of Criminal Procedure 33 allows a court to grant a new trial "if

the interest of justice so requires." A decision to grant a motion for a new trial rests

within the sound discretion of the court. *United States v. Powell*, 932 F.2d 1337,

1340 (9th Cir. 1991). A district court, in evaluating a motion for a new trial, "need

not view the evidence in the light most favorable to the verdict; it may weigh the

evidence and in so doing evaluate for itself the credibility of the witnesses." *United*

*States v. A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d 1206, 1211 (9th Cir. 1992)

(quoting *United States v. Lincoln*, 630 F.2d 1313, 1319 (8th Cir.1980)). "If the

court concludes that, despite the abstract sufficiency of the evidence to sustain the

verdict, the evidence preponderates sufficiently heavily against the verdict that a

serious miscarriage of justice may have occurred, it may set aside the verdict, grant

a new trial, and submit the issues for determination by another jury." *Id.* at 1211–

12 (quoting *Lincoln*, 630 F.2d at 1319).

**DISCUSSION**

The Government argues that Rule 33 is not the appropriate vehicle for challenging an evidentiary ruling at trial and that the Court correctly admitted the text messages as statements against the declarant's penal interest under Federal Rule of Evidence 804(b)(3). (Doc. 106.) The Court disagrees. Improper admission of hearsay evidence can warrant a new trial under Rule 33. See, e.g., *United States v. Arroyo*, 805 F.2d 589, 597–99 (5th Cir. 1986); *United States v. DiMasi*, 810 F. Supp. 2d 347, 350–51 (D. Mass. 2011); *United States v. Pollack*, 701 F. Supp. 117, 120–21 (N.D. Tex. 1988), *aff'd*, 890 F.2d 1162 (5th Cir. 1989). The Court agrees, however, that sufficient testimony and evidence supported admission of the text messages as statements against S.W.'s interest under Federal Rule of Evidence 804(b)(3).

Rule 804(b)(3) permits introduction of an unavailable declarant's hearsay statement when "a reasonable person in the declarant's position would have made [the statement] only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability[.]" Fed. R. Evid. 804(b)(3)(A). In a criminal case, a statement against penal interest also must be "supported by corroborating circumstances that clearly indicate its trustworthiness after considering the totality of circumstances under which it was

6

made and any evidence that supports or undermines it." Fed. R. Evid. 804(b)(3)(B).

The Ninth Circuit has interpreted Rule 804(b)(3) to permit statements against penal interest when the statement "solidly inculpates" the declarant and when a "reasonable person in the declarant's position would not have made [the statement] unless it were true." *United States v. Magana-Olvera*, 917 F.2d 401, 407 (9th Cir. 1990) (quoting *United States v. Monaco*, 735 F.2d 1173, 1176 (9th Cir.1984)). The exception applies "not only to confessions of criminal responsibility, but also to remarks that 'tend to subject' the declarant to criminal liability." *Magana-Olvera*, 917 F.2d at 407 (quoting *United States v. Layton*, 720 F.2d 548, 559–60 (9th Cir.1983)).  Though the statement need not be a "direct confession[] of criminal responsibility," the statement "must, in a real and tangible way, subject him to criminal liability."  *United States v. Hoyos*, 573 F.2d 1111, 1115 (9th Cir. 1978).

Malatare relies on a recent Ninth Circuit memorandum opinion, *United States v. Davis*, to argue that the text messages would not have subjected S.W. to criminal liability in a "real and tangible way." *United States v. Davis*, No. 22-50058, 2024 WL 222271, at *1 (9th Cir. Jan. 22, 2024).  A jury convicted Davis of distribution of fentanyl resulting in the death of Joseph Chambers.  *Davis*, 2024 WL 222271, at *1. The Ninth Circuit concluded that the trial court erred by

admitting text messages sent by Chambers to Davis. *Id.* at \*2. The two messages in question, sent at different times during the day, included, "Hey what's up with that G spot," and, "Did u get a price?" *Id.* at \*1. The Government argued on appeal that "G spot" referred to a gram of cocaine and that "price" referred to a drug-related purchase. *Id.* The Ninth Circuit concluded these messages did not inculpate the declarant sufficiently to qualify as a statement against penal interest. *Id.*

*Davis* differs from the facts of Malatare's case in several key ways. The trial court in *Davis* abused its discretion by admitting Chambers's messages under Federal Rule of Evidence 801(d)(2)(A) as statements of a party opponent. *Davis*, 2024 WL 222271, at \*1. Chambers was not a party to the case, but rather, the decedent. *Id.* The Government offered Rule 804(b)(3) for the first time on appeal as an alternative ground for affirming Davis's conviction. *Id.* No foundational evidence or testimony supported the inference that a "G spot" meant a gram of cocaine or that "price" referred to the price of cocaine. *Id.*

At Malatare's trial, the Government presented witness testimony explaining the context for the high cost of fentanyl pills in Browning, Montana (Doc. 96 at 142–43); the fact that people seeking to purchase drugs would avoid using the names of drugs and instead say, "I'm looking" (Doc. 96 at 142–43); that drug sellers would use the words "Are you looking?" (Doc. 96 at 144); and that the most

common quantity of fentanyl to purchase was "a half" due to the cost (Doc. 96 at

145). Though the Government referred to a half a pill of "methamphetamine"

during direct examination, the context of Jaynell Davis's testimony clarifies that

purchasers of fentanyl would use the language, "Can I get a half?" to request half a

fentanyl pill. (Doc. 96 at 146–47.)

Unlike in *Davis*, the Government removed all "purely logistical" messages

sent by S.W. before admitting Exhibit 30.  (Doc. 90-1 at 32); *Davis*, 2024 WL

222271, at *1.  S.W.'s message—"Yeah I'll be home. Just got off work."—

responds directly to Malatare's question—"you looking".  (Doc. 90-1 at 32.) Thus,

the Government offered S.W.'s statements not to provide "context" but to show

that S.W. was "looking" to buy drugs and could "only afford a half". (Doc. 90-1 at

32.)  The foundational testimony provided by Jaynell Davis explained the language

typically used to arrange a fentanyl purchase and distinguishes S.W.'s messages

from those at issue in *Davis*.

The Court properly admitted the text messages under Rule 804(b)(3) as

statements against S.W.'s interest.  S.W.'s messages, by themselves, need not

provide sufficient evidence to support a criminal charge to be admissible under

Rule 804(b)(3). The statements must subject S.W. to criminal liability in a "real

and tangible" way, but nothing in Rule 804(b)(3) requires the statements to

support, independent of any other evidence, probable cause for a criminal charge.

*Hoyos*, 573 F.2d at 1115; *Magana-Olvera*, 917 F.2d at 407.  Though Agent Donohue testified that "just" the text messages would not provide sufficient evidence to charge S.W. with a crime, Jaynell Davis testified that the language used by S.W. in the messages, specifically confirmation that S.W. was "looking" and that S.W. could "only afford a half," illustrated an arrangement to purchase fentanyl. (Doc. 96 at 160–61; Doc. 96 at 142–48.)

The messages may not have triggered law enforcement to arrest S.W. for a crime, but communicating an intent to purchase half a pill of fentanyl would, in a real and tangible way, subject S.W. to criminal liability. The Ninth Circuit has held that a declarant's statement to an informant that he would not sell the defendant heroine because she owed him money from a prior transaction was admissible under Rule 804(b)(3).  *United States v. Nazemian*, 948 F.2d 522, 529–30 (9th Cir. 1991).  The statement "indicated that [the declarant] was involved in a heroin transaction, which clearly would tend to subject him to criminal liability." *Id.* at 530. Similarly, the Government provided evidence that S.W.'s messages indicated he was involved in a drug transaction, which would subject him to criminal liability.

Finally, corroborating circumstances further indicate the trustworthiness of S.W.'s statements. Neither S.W. nor Malatare were in custody when they sent the messages, and S.W. had no reason to curry favor with authorities.  The messages

do not shift blame to another person.  See *Nazemian*, 948 F.2d at 530 (citing Fed. R. Evid. 804(b)(3) advisory committee's notes).  Like in *Nazemian*, other evidence presented at trial corroborated the veracity of the messages, including direct evidence that Malatare routinely purchased large quantities of fentanyl intending to sell it to others, that Malatare was familiar with common fentanyl trafficking language such as a "roll" or "boat" of fentanyl, and circumstantial evidence that shortly after the message exchange, S.W. met with Malatare and then exhibited signs of fentanyl use. *Id.* at 531–32.

The totality of the evidence presented at trial and the credibility of the Government's witnesses weigh against granting a new trial. *A. Lanoy Alston, D.M.D., P.C.*, 974 F.2d at 1211. The Government presented credible witness testimony connecting Malatare to fentanyl sales in Browning generally and to S.W. specifically, including law enforcement investigators, an informant, S.W.'s family members, and Malatare's text messages to others. Though the text message exchange in Exhibit 30 formed a "key piece" of the Government's evidence against Malatare (Doc. 96 at 152), significant evidence apart from Exhibit 30 supported the conclusion that Malatare sold fentanyl to S.W. on the day of his death.

**CONCLUSION**

The messages between S.W. and Malatare fall under the hearsay exception in Federal Rule of Evidence 804(b)(3) because they represent statements against S.W.'s interest.  Admission of the messages does not require a new trial under Federal Rule of Criminal Procedure 33.

**ORDER**

Accordingly, **IT IS ORDERED** that Malatare's Motion for New Trial (Doc. 98) is **DENIED**.

Dated this 18th day of December, 2024.

_____
Brian Morris, Chief District Judge
United States District Court